# United States District Court
# District of Massachusetts

CERTAIN INTERESTED UNDERWRITERS
 at LLOYD'S LONDON,
    Plaintiff,

    v.                       CIVIL ACTION NO. 09-cv-11279-NMG

PERRY STOLBERG and JOSE
ROMERO,
    Defendants.

## *REPORT AND RECOMMENDATION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#14), OPPOSITION OF PERRY STOLBERG TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION OF STOLBERG FOR SUMMARY JUDGMENT (#24), AND OPPOSITION AND CROSS-MOTION OF JOSE ROMERO TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (#27)*

COLLINGS, U.S.M.J.

## *I. Introduction*

This insurance coverage dispute is before this Court on cross-motions for summary judgment. On July 30, 2009, Certain Interested Underwriters at Lloyd's London ("Lloyd's") filed a Complaint for Declaratory Judgment, pursuant to 28 U.S.C. § 2201, seeking a declaration of the rights of the parties under an insurance policy issued to defendant Perry Stolberg ("Stolberg"). (#1) The dispute arises out of a state court action in Suffolk Superior Court ("underlying action") in which Jose Romero ("Romero") filed suit against Stolberg alleging that a construction site accident on a property owned by Stolberg resulted in serious and permanent bodily injuries. (#15-3) Lloyd's seeks a declaration that Stolberg's insurance policy provides no coverage – and thus no duty to defend or indemnify – with respect to the types of claims asserted by Romero against Stolberg in the underlying action. (#1) Stolberg and Romero have been joined as co-defendants in the present action due to Romero's interest in its outcome.

On December 30, 2010, Lloyd's filed a Motion for Summary Judgment (#14), along with a Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (#15) and a Statement of Material Facts as to Which

Plaintiff Contends There is No Genuine Issue to Be Tried, (#16). On March 22, 2011, Stolberg filed an Opposition to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment (#24) along with a Memorandum of Law in Opposition to the Motion for Summary Judgment of Plaintiff and in Support of his Cross Motion for Summary Judgment (#26), and a Statement of Additional Material Facts. (#25) Romero concurrently filed a joinder to Stolberg's Opposition to the Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment and filed his own separate Opposition and Cross-Motion to Plaintiff's Motion for Summary Judgment on the basis of additional arguments. (##27-29) Lloyd's subsequently submitted an Opposition to Defendants' Cross-Motions for Summary Judgment and/or in Reply to Defendants' Oppositions to Plaintiff's Motion for Summary Judgment. (#31) The motions are thus ripe for disposition.

## II. Factual Background

A. *The Insurance Policy*

Stolberg purchased a commercial general liability ("CGL") insurance policy, policy number QML0509765 ("the policy"), with effective dates between May 20, 2005 and May 20, 2006. (#15-5) The policy contained

coverage limits of $1,000,000 per occurrence and $2,000,000 aggregate with a $500 per claim deductible. (#15-5)  Although the policy originally only provided coverage for a property in Somerville, Massachusetts, it was amended on September 29, 2005 to include the property located at 204-206 Norfolk Street, Cambridge, Massachusetts. (#25 ¶ 15)  It is on this latter property that the events giving rise to this dispute took place.

The policy issued to Stolberg states that the "insurance applies to 'bodily injury'. . . only if: (1) [t]he 'bodily injury'... is caused by an 'occurrence' that takes place in the 'coverage territory'" and "(2) the 'bodily injury'. . . occurs during the policy period." (#15-5, at 23)  "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time" (#15-5, at 31); and "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (#15-5, at 32).  The policy additionally states that Lloyd's

> will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will

4

have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' . . . to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result.

(#15-5, at 23)

The policy also contains several exclusions, two of which are at issue in the present action. The first exclusion is entitled "EXCLUSION - INDEPENDENT CONTRACTORS" and states:

This insurance does not apply to 'bodily injury', 'property damage', 'personal and advertising injury' or medical payments arising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations.

(#15-5, at 50)

The second exclusion is entitled "EXCLUSION - INDEPENDENT CONTRACTORS' EMPLOYEES OR LEASED WORKERS" and states:

This insurance does not apply to 'bodily injury' . . . to:

1.   Any employee or leased worker of independent contractors arising out of operations performed for you by said independent contractors or your acts or omissions in connection with the general supervision of such operations if you have rejected the obligations of any

workers' compensation or any similar law, or abrogated, waived or otherwise set aside common rights or defences generally accorded an employer under any workers' compensation, disability benefits or unemployment compensation law or any similar law . . . .

(#15-5, at 52)

B. *The Underlying Action*

At all relevant times, Stolberg was the owner of 204-206 Norfolk Street in Cambridge, Massachusetts. (#1 ¶ 11, #25 ¶¶ 7-8)  Stolberg purchased 204-206 Norfolk Street in Cambridge to renovate the property into condominiums ("the Project"). (#25 ¶ 7)  To this end, Stolberg hired Allen Fox ("Fox") as the general contractor.  (#25 ¶ 3)  Simply the Best Construction ("STBC") was a subcontractor on the project working under Fox. (#25 ¶ 2)

Romero alleges that he was injured on October 6, 2005, in an accident that occurred on the premises of 204-206 Norfolk Street. (#16 ¶ 1)  Romero contends he was working for STBC on the premises when he fell off a defective ladder and suffered serious and permanent injuries.  (#16 ¶ 3)[1]  As discussed in further detail below, the issue of whether Romero was on the 204-206 Norfolk Street premises as an employee of STBC or for some other

---

[1]

These injuries include, but are not limited to, traumatic brain injury, subdural hematoma, and cognitive disabilities. (#15-3 ¶ 17)

purpose is in some dispute. It is undisputed, however, that Romero previously worked for STBC as a day laborer on a construction project other than the one owned by Stolberg at 204-206 Norfolk Street, referred to as the Queensberry Street project. (#25-1, at 4)

Romero filed suit in Suffolk Superior Court (Civil Action No. 08-2607) on June 3, 2008. (#15-2) A First Amended Complaint was subsequently filed on October 8, 2009. (#15-3) Stolberg is listed as the sole defendant[2] from whom Romero seeks redress for claims of negligence and breach of contract. (#15-3 ¶¶ 14-22) Lloyd's has tendered defense of Stolberg in connection with this underlying action. (#1 ¶14, #5 ¶14) As per the terms of the policy, this defense is subject to a reservation of Lloyd's' right to disclaim coverage and withdraw from the defense if an exclusion in the policy excludes coverage for the claims asserted against Stolberg in the underlying action.[3] (#1 ¶14, #5 ¶14) The dispute in the present action concerns this right to disclaim coverage and withdraw from the defense.

In this action for declaratory judgment, Lloyd's has moved for summary

---

[2]

The complaint as originally filed listed Allen Fox d/b/a A. Fox Construction Co. and Perry Stolberg as co-defendants.

[3]

It appears as though the underlying action has not yet been resolved. At oral arguments, Romero's attorney stated that the lawsuit will be going to trial in November 2011.

judgment claiming that an exclusion, known as the "Independent Contractors' Exclusion," excludes coverage for the claims Romero makes in the underlying action because he alleges bodily injury that arises from operations performed by STBC, an independent contractor of Stolberg. (#15 at 1)  Stolberg and Romero ("the defendants") have opposed Lloyd's' motion for summary judgment arguing that there is a genuine issue of material fact in dispute regarding whether Romero was an employee of STBC at the time of the injury. (#26 at 1, 6; #29 at 1-2)  The defendants have also cross-motioned for summary judgment. The defendants argue that the presence of another exclusion, known as the "Independent Contractors' Employees or Leased Workers Exclusion" ("Independent Contractors' Employees Exclusion"), along with the Independent Contractors' Exclusion creates an ambiguity which requires an interpretation of coverage in favor of Stolberg.[4]  The Court takes up these arguments below.

---

[4] Alternatively, the defendants argue that if the interpretation sought by Lloyd's is correct, the Independent Contractors' Exclusion should nevertheless be unenforceable as it renders the policy illusory.  This argument has no merit because even if the exclusions were construed in the manner urged by Lloyd's, the policy would still have value to the insured and provide coverage under other circumstances, such as in the instance of an ordinary slip and fall injury. The coverage provided by an insurance policy is not illusory even when the operation of an exclusion results in very limited coverage. *Bagley v. Monticello Ins. Co.*, 430 Mass. 454, 459, 720 N.E.2d 813, 817 (1999).

### III. Summary Judgment Standard

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas-Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted). When considering a motion for summary judgment, "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).[5] The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support[ing] that assertion by affidavits, admissions, or other materials of evidentiary quality." *Mulvihill v. Top-Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003) (citations omitted). "Once the moving party avers the absence of genuine issues of material fact, the nonmovant must show that a factual dispute does exist, but summary judgment cannot be defeated by relying on improbable inferences, conclusory allegations, or rank speculation." *Fontánez-Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54-55 (1 Cir., 2006)

---

[5] Rule 56 was amended effective December 1, 2010. The summary judgment standard is now set forth in Rule 56(a), but "[t]he standard for granting summary judgment remains unchanged." *Opthalmic Surgeons, Ltd. v. Paychex, Inc.*, 632 F.3d 31, 35 n.4 (1 Cir., 2011).

(internal quotation marks and citation omitted).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986))(further internal quotation marks omitted).

## IV. Discussion

A. *Interpretation of the Insurance Contract*

The insurer has a duty to defend third-party actions against the insured if the allegations contained in the third-party complaint are "'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered

by the policy terms." *Sterilite Corp. v. Cont'l Cas. Co.,* 17 Mass. App. Ct. 316, 318, 458 N.E.2d 338, 340 (1983), *rev. denied*, 391 Mass. 1102, 459 N.E.2d 826 (1984) (Table). This obligation also extends to that which the insurer knows or can readily ascertain. *Desrosiers v. Royal Ins. Co. of America*, 393 Mass. 37, 40, 468 N.E.2d 625, 627-28 (1984). "[T]he process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp.*, 17 Mass. App. Ct. at 318, 458 N.E.2d at 341. Furthermore, "[i]t is the *source* from which the plaintiff's personal injury originates rather than the specific *theories of liability* alleged in the complaint which determines the insurer's duty to defend." *Bagley v. Monticello Ins. Co.,* 430 Mass. 454, 458, 720 N.E.2d 813, 817 (1999) (citation and quotation marks omitted).

When a dispute arises with regards to the interpretation of the terms of the insurance policy, the construction of the policy is a matter of law to be determined by the court. *Massachusetts Property Ins. Underwriting Ass'n v. Gallagher*, 75 Mass. App. Ct. 58, 59, 911 N.E.2d 808, 810 (2009*).* Under Massachusetts law, it is well-settled that the interpretation of an insurance

contract is no different than any other contract and, like all contracts, the insurance policy must be construed "according to the fair and reasonable meaning of its words." *City Fuel Corp. v. Nat'l Fire Ins. Co. of Hartford*, 446 Mass. 638, 640, 846 N.E.2d 775, 777 (2006); *Hakim v. Mass. Insurers' Insolvency Fund,* 424 Mass. 275, 280, 675 N.E.2d. 1161, 1164 (1997). Like other provisions in the policy, if the exclusion is free from ambiguity, the exclusion must be given its usual and ordinary meaning. *Hakim,* 424 Mass. at 280-81, 675 N.E.2d at 1165; *Barnstable County Mut. Fire Ins. Co. v. Lally*, 374 Mass. 602, 605, 373 N.E.2d 966, 968 (1978). But "[d]oubts created by any ambiguous words or provisions are to be resolved against the insurer." *City Fuel Corp.,* 446 Mass. at 640, 846 N.E.2d at 777.

An ambiguity exists within the policy when the language in an insurance contract is reasonably susceptible to more than one meaning. *Middlesex Ins. Co. v. American Employers Ins. Co.*, 9 Mass. App. Ct. 855, 856, 400 N.E.2d 882, 883 (1980) (rescript). However, "difficulty in comprehension does not equate with ambiguity," and an ambiguity is not "created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Massachusetts Property Ins. Underwriting Ass'n v. Wynn*, 60 Mass. App. Ct. 824, 827, 806 N.E.2d 447, 450 (2004) (internal quotation

marks and citation omitted); *Jefferson Ins. Co. of N.Y. v. City of Holyoke,* 23 Mass. App. Ct. 472, 475, 503 N.E.2d 474, 476-77, *rev. denied*, 399 Mass. 1104, 506 N.E.2d 146 (1987) (Table). Rather, "[i]t must be shown that reasonably intelligent persons would differ as to which one of two or more meanings is the proper one." *Jefferson Ins. Co. of N.Y.,* 23 Mass. App. Ct. at 475, 503 N.E.2d at 476. The ambiguity, however, may exist when read in the context of the entire policy or, alternatively, when applied to the subject matter. *Id.* at 475, 503 N.E.2d at 477. When there is more than one rational interpretation of the contract, "'the insured is entitled to the benefit of the one that is more favorable to it.'" *Hakim*, 424 Mass. at 281, 675 N.E.2d at 1165 (quoting *Trustees of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 849, 616 N.E.2d 68 (1993) (further citation omitted)); *see also American Home Assurance Co. v. AGM Marine Contractors, Inc.,* 379 F. Supp.2d 134, 136 (D. Mass. 2005), *aff'd*, 467 F.3d 810 (1 Cir., 2006).

In the instant case, the parties do not dispute that the circumstances at issue in the underlying action would trigger coverage for Stolberg absent a relevant exclusion in the policy.[6] Lloyd's, however, disputes coverage based not on what the policy purports to cover, but rather, on what it purports to

---

[6] Lloyd's also conceded this point at oral argument.

exclude. Specifically, Lloyd's points to the presence of the Independent Contractors' Exclusion. Undoubtedly, the Independent Contractors Exclusion, on its face, seems to speak to the circumstances alleged in Romero's complaint, especially in light of the broad interpretation courts have afforded the phrase "arising out of" when used in insurance policies. *See Bagley*, 430 Mass. at 457, 720 N.E.2d at 816 ("The phrase 'arising out of' must be read expansively, incorporating a greater range of causation than that encompassed by proximate cause under tort law. . . . [C]ases interpreting the phrase 'arising out of' in insurance exclusionary provisions suggest a causation more analogous to 'but for' causation . . . ."); *Monticello Ins. Co. v. Dion*, 65 Mass. App. Ct. 46, 48-49, 836 N.E.2d 1112, 1114 (2005). Under Massachusetts law, the phrase "arising out of" is "generally understood to mean 'originating from,' 'growing out of,' 'flowing from,' 'incident to,' or 'having connection with.'" *Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co.*, 220 F.3d 1, 7 (1 Cir., 2000). Romero's complaint alleges that he was an employee of STBC, that STBC was a subcontractor, and that any injury he may have sustained "arose from" operations performed by STBC. Presumably this places the injury squarely within the Independent Contractors' Exclusion. So, if the Independent Contractors' Exclusion were the only provision at issue here then the

interpretation of the contract would be straightforward. Based on the underlying allegations of the complaint, the exclusion would apply and no coverage would obtain. The parties do not appear to disagree on this point. (*See* #26 at 13)

Stolberg urges the Court to read the second exclusion as effectively restoring coverage for the employees of independent contractors. Again, the endorsement on which Stolberg relies states that the insurance does not apply to "bodily injury" to

> Any employee or leased worker of independent contractors arising out of operations performed for you by said independent contractors or your acts or omissions in connection with the general supervision of such operations if you have rejected the obligations of any workers' compensation or any similar law, or abrogated, waived or otherwise set aside common rights or defences generally accorded an employer under any workers' compensation, disability benefits or unemployment compensation law or any similar law . . . .

(#15-5, at 52)[7]

According to Stolberg, this second exclusion "is clearly premised on the fact that there is coverage under the policy (otherwise there would be no need

---

[7] Stolberg has averred that he has not rejected the obligations of any workers' compensation or any similar law, or abrogated or waived his common law rights or defenses accorded to an employer under workers' compensation laws. (#25 ¶ 19)

for the endorsement) for 'bodily injury' to employees of [independent contractors]." (#26 at 7) Stolberg further argues that "[w]ere coverage for employees of independent contractors to be excluded by the Independent Contractors Endorsement as argued by Lloyd's, there would be absolutely no reason for the inclusion of the Independent Contactors [sic] Employees Endorsement." (#26 at 15)

The Court must disagree with Stolberg's reading of the exclusion. In the Court's view, the exclusion, though not a model of draftsmanship, operates to exclude coverage in instances in which the insured could be obligated to cover the workers' compensation claims of the employee of an independent contractor. Under Massachusetts Workers' Compensation law, an insured employer, such as Stolberg, who contracts to have work done by an uninsured independent contractor, may become liable to pay the workers' compensation claim of an injured employee of an independent contractor. *See* Mass. Gen. L. Ch. 152 § 18. The purpose of this law is "to prevent . . . [an insured person] from escaping the obligation of the compensation act by letting out part of his work to irresponsible subcontractors or independent contractors" who have failed to obtain workmens' compensation insurance. *Mobil Oil Corp. v. Roumeliotis*, 38 Mass. App. Ct. 245, 250, 647 N.E.2d 69, 73 (internal quotation

marks, emphasis and citation omitted), *rev. denied*, 420 Mass. 1102, 648 N.E.2d 1285 (1995) (Table). Thus, there may be instances in which an insured such as Stolberg can be deemed the statutory employer of the employee of an independent contractor or subcontractor for purposes of the Massachusetts Workmens' Compensation law. In the Court's view, this exclusion states that if the insured has failed to obtain workers' compensation insurance ("has rejected the obligations of any workers' compensation or any similar law," etc.), this policy will not serve to provide the workers' compensation insurance that the insured may become obligated to pay under state statute. In other words, this is a variation of the standard workers' compensation exclusion, which the policy also contains[8]--it operates specifically to exclude any obligations of the insured to pay workers' compensation coverage to the employee of an independent contractor. *Cf.* 3 Jeffrey E. Thomas and Francis J. Mootz III, *New Appleman on Insurance Law Library Edition*, § 18.03[4], at 18-45 (2010) ("The basic purpose of the Workers' Compensation Exclusions is

---

[8]

The Workers' Compensation exclusion in this policy provides:

> This insurance does not apply to:
> ...
> Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

(#15-5, at 22)

to prevent a CGL policy from being converted into a workers' compensation insurance policy."). Thus, the exclusion advises the insured: if you have chosen not to carry workmen's compensation as you are required to do under Massachusetts law, be aware that this policy will not fill in the workmens' compensation gap–that is for a workmens' compensation insurance carrier. So, the Court must disagree that the second exclusion serves no purpose separate from the Independent Contractors' Exclusion.

In the Court's view, Stolberg's reading of the exclusion fails for two additional reasons. First, Stolberg's proffered interpretation of the exclusion fails to explain the presence of the workers' compensation language in the exclusion. And to ignore the language is to ignore the import and meaning of the exclusion. "Every word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337, 355, 910 N.E.2d 290, 304 (2009) (internal quotation marks and citation omitted). Read in this way, the exclusion is not inconsistent with the Independent Contractor's Exclusion; rather, it specifically excludes certain possible coverage that Stolberg might have been obliged to provide under the Massachusetts Workmens' Compensation statute.

Second, Stolberg reasons that the inverse of the exclusion necessarily holds true. According to Stolberg, because the endorsement excludes coverage for bodily injury to employees of independent contractors if the insured has *not* met its obligations under state workers' compensation laws, then, in Stolberg's view, the converse operates to provide coverage: if the insured *has* met its obligations under state workers' compensation laws, then coverage extends to bodily injury of the employees of independent contractors. But this reasoning does not follow as a matter of logic or as a matter of contract construction: "The notion . . . that if the exclusion is read so as not to extend to [certain] cases, insurance coverage affirmatively and automatically follows, is not self-proving and would seem to be in the teeth of 'the basic principle that exclusion clauses *subtract* from coverage rather than grant it.'" *Donovan v. Commercial Union Ins. Co.,* 44 Mass. App. Ct. 596, 602, 692 N.E.2d 536, 540 (quoting *Weedo v. Stone-E-Brick, Inc.*, 81 N.J. 233, 247, 405 A.2d 788 (1979)), *rev. denied*, 427 Mass. 1108, 700 N.E.2d 268 (1998) (Table); *see also Bond Bros., Inc. v. Robinson*, 393 Mass. 546, 549, 471 N.E.2d 1332, 1335 (1984) ("We flatly reject the concept that, because exclusion (a) excludes certain possible coverage and then provides for an exception, that exception creates an ambiguity, or an objectively reasonable expectation of coverage,

when it is confronted with another explicit exclusion.").[9]

For these reasons, the Court concludes that the policy excludes coverage for bodily injuries to employees of independent contractors under the broad "arising under" language contained in the exclusions.

### B. Defendants' Opposition to Summary Judgment

Stolberg argues alternatively that there is a genuine issue of material fact in dispute that warrants denial of Lloyd's' motion for summary judgment. He argues that although Romero alleges in the underlying action that he was employed by STBC on the day of the accident, Robert Gatta ("Gatta"), the proprietor of STBC, has testified in deposition that Romero did not work for STBC at the 204-206 Norfolk Street premises. (#26 at 6) According to Stolberg, a question of fact exists concerning why Romero was present on the premises on the day he was injured. Likewise, Romero himself argues that Gatta's testimony (the truthfulness of which Romero disputes) creates a triable issue; Romero takes the self-contradicting position that a jury may well believe Gatta's testimony over his own. (#29 at 1-3) Lloyd's argues, essentially, that no genuine issue of fact exists because Romero himself has alleged that he was

---

[9]

   In the Court's view, this provision does not set out an "exception" to an exclusion, under which "[i]n layman's terms, if the exception to the exclusion applies, there is coverage. If not, then there is no coverage." *Mass. Property Ins. Underwriting Assoc. v. Wynn*, 60 Mass. App. Ct. 824, 826, 806 N.E.2d 447, 449 (2004).

employed by STBC on the day of the accident, and having made such an allegation, he cannot disclaim it for purposes of summary judgment. Furthermore, Lloyd's contends that the defendants' mere speculation that Romero was on the property for some purpose other than to do construction work is insufficient to create a dispute of fact.

Under Massachusetts law, "[t]he duty to defend is . . . 'based on the facts alleged in the complaint and those facts which are known by the insurer.'" *B&T Masonry Construction Co., Inc. v. Public Service Mutual Ins. Co.*, 382 F.3d 36, 39 (1 Cir., 2004) (quoting *Boston Symph. Orch., Inc. v. Comm'l Union Ins. Co.*, 406 Mass. 7, 10, 545 N.E.2d 1156, 1158 (1989)).  However, "an insurer has no obligation to defend when the allegations of a complaint describe with precision . . . conduct of a defendant which the insurance policy expressly excludes from coverage."  *Terrio v. McDonough*, 16 Mass. App. Ct. 163, 168, 450 N.E.2d 190, 194, *rev. denied*, 390 Mass. 1102, 453 N.E.2d 1231  (1983) (Table).[10]  Indeed, "'when the allegations in the underlying complaint lie

---

[10]
    *Terrio v. McDonough,* 16 Mass. App. Ct. 163, 450 N.E.2d 190 (1983), is instructive.  In *Terrio*, the plaintiff in the underlying action alleged intentional conduct, which the policy did not cover.  The defendant in the underlying action asserted that his conduct was not intentional, but was at most negligent (and so covered by the insurance policy).  But the plaintiff in *Terrio* "expressly disavowed a negligence theory after inquiry by the court and introduced no evidence of negligence."  *Id.* at 167, 450 N.E.2d at 193.  *Terrio* concluded that the insurer had no duty to defend "when the allegations of a complaint describe with precision intentional conduct of a defendant which the insurance policy expressly excludes from coverage."  *Id.* at 168, 450 N.E.2d at 194.  Moreover, the plaintiff unambiguously disclaimed an act covered by insurance.  *Id.* Likewise, here, Romero has disclaimed any theory that might bring the allegations of the complaint within the scope of coverage.

expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant.'" *Transamerica Ins. Co. v. KMS Patriots*, L.P., 52 Mass. App. Ct. 189, 193, 752 N.E.2d 777, 781 (2001) (quoting *Timpson v. Transamerica Ins. Co.*, 41 Mass. App. Ct. 344, 347, 669 N.E.2d 1092, 1095 (1996) (further quotation marks and citation omitted).

Here, the defendants raise the possibility that a jury *could* believe Gatta's testimony that Romero was not employed to work on the construction site in question, and they suggest that because Lloyd's knows that Gatta disputes that he hired Romero to work at 204-206 Norfolk Street, Lloyd's is on notice of a claim that could fall under the policy. But that Gatta disputes the facts in the underlying complaint (a reading of Gatta's entire testimony makes clear that Gatta does not believe the allegations of the complaint) does not convert Romero's claim into one that is covered under the policy. The question remains whether the allegations supporting Romero's claim "are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms." *Sterilite Corp.*, 17 Mass. App. Ct. at 318, 458 N.E.2d at 340 (citations omitted). Romero himself has not disavowed the allegations of the complaint, or suggested that he was on the worksite for any purpose other than to work for Gatta. Gatta himself does not appear to believe that Romero

was on the worksite at all. If a jury were to believe Gatta's testimony that Romero was not on the worksite, then the most that could be established is that Romero was not injured on the worksite at all. Those facts do no give rise to a claim covered by the policy. Stolberg points to no competent evidence that Romero was injured on the premises under circumstances that might give rise to a covered claim.

Further, and more to the point, nothing in the underlying complaint remotely suggests that Romero was on the premises other than to work for Gatta, and Romero continues to maintain in this Court that he was hired to work for Gatta. And because the policy excludes coverage for bodily injury "arising out of operations performed for you by independent contractors or your acts or omissions in connection with your general supervision of such operations," there is no possible way to envisage a loss based on the allegations of the underlying complaint that "fits the expectation of protective insurance reasonably generated by the terms of the policy." *Sterilite Corp.*, 17 Mass. App. Ct. at 318, 458 N.E.2d at 341.

## V. Conclusion

For the foregoing reasons, the Court RECOMMENDS GRANTING the Plaintiff's Motion for Summary Judgment (#14), and DENYING the Opposition

of Perry Stolberg to Plaintiff's Motion for Summary Judgment and Cross Motion of Stolberg for Summary Judgment (#24), and the Opposition and Cross-Motion of Jose Romero to Plaintiff's Motion for Summary Judgment (#27).

## *VI. Review by the District Judge*

The parties are hereby advised that any party who objects to these recommendations must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

_/s/ Robert B. Collings_

ROBERT B. COLLINGS
United States Magistrate Judge

September 2, 2011